## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RUBEN O. MANRIQUEZ,

        Plaintiff,

vs.                                                    No. CIV 03-1299 RHS

JO ANNE B. BARNHART, Commissioner
of  Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed April 1, 2004.[Doc. No.7].   The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits.

Plaintiff, age 43, alleges a disability which commenced January 9, 1999  due to lower back pain, neck pain, leg pain, muscle spasms, shortness of breath and limitations in range of motion in his spine.  The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration.  After conducting three administrative hearings, the Commissioner's Administrative Law Judge ("ALJ") also denied the applications, concluding that there were jobs existing in significant numbers that Mr. Manriquez could perform.   The Appeals Council denied review of the ALJ's decision, thus  the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

At the time of the Commissioner's final decision, claimant was 42 years old, with a fourth grade education received in Mexico and was unable to communicate in English.  His past relevant work was as a laborer. Tr. at 44.

-1-

The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted).  Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id. (citation omitted).

Plaintiff  raises five issues on appeal.  Mr. Manriquez claims that:  (1) the ALJ did not properly evaluate his impairments in relation to the requirements of listing 1.05C; (2) that the ALJ's decision was not supported by substantial evidence; (3) that the ALJ failed to perform a proper credibility analysis; (4) that the ALJ failed to obtain sufficient evidence to assess Plaintiff's claim; and (5) that the ALJ failed to accord the appropriate weight to the opinion of the treating physician.

"To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A)).  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  Id. (citations omitted).        At the first four levels of the evaluation, the claimant must show:  (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past.  At the fifth

step, the Commissioner must produce evidence regarding the claimant's ability to perform other work.  Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

The ALJ denied Plaintiff's case at step five of the sequential evaluation process. Based on the testimony of a vocational expert,  the ALJ  found that Mr. Manriquez  could perform other jobs existing in significant numbers in the regional or national economies.  Tr at 18.

Plaintiff injured his back in January of 1999. In February 1999,  treating physician Dr. Richard Nail restricted Plaintiff from lifting more than 20 pounds and from bending, squatting and kneeling.  Tr. at 207.  In March, treating physician Dr. Thomas Cohen noted some degree of symptom magnification and exaggerated pain behavior and he  restricted Plaintiff to sedentary work activities without any bending, lifting, twisting or climbing.  Tr. at 251, 245, 255.  Dr. Cohen prescribed pain medications, physical therapy and epidural injections.  Tr. at 232-255.  In May, orthopedic surgeon Dr. Michael Woods examined Plaintiff and found that Plaintiff's EMG results were normal and that his MRI showed signal changes at L5-S1 without significant  neural compression.  He found four out of five positive Waddell signs[1] and concluded that Plaintiff was magnifying his symptoms. Tr. at 338. Dr. Woods diagnosed a small herniated disc and opined that Plaintiff's best choice was to loose weight, get in shape, stop smoking, and seek lighter work that would not stress his back.  Tr. at 340.  By July 1999, Dr. Cohen found that Plaintiff had reached maximal medical improvement and could return to work "at a maximum of light duty level and possibly to a medium level of duty, but not heavy labor as he had been in the past."  Tr. at 277.

---

[1] Waddell signs indicate non-organic causes of pain due to deliberate deception on part of the patient or to malingering (sympathy) motivation caused by psychosomatic disorders. See P. Douglas Kiester, MD, and Alexander D. Duke, MD, Is it Malingering, or is it Real?, POSTGRADUATE MEDICINE, December 1999.

Plaintiff was also treated by orthopedist Dr. Brian Delahoussaye who found that Plaintiff retained normal tendon reflexes of the lower extremities, had no lower extremity atrophy or motor sensory changes and had an intact gait. Like Dr. Cohen and Dr. Woods, Dr. Delahoussaye also noted that plaintiff displayed positive Waddell sign(s). Dr. Delahoussaye changed Plaintiff's medication several times in order to eliminate side effects and to provide better pain relief. Tr. 328-337.

**First Alleged Error**

Plaintiff alleges that the ALJ erred when she failed to find that he met the requirements of impairment listing 1.05(C) (vertebrogenic disorders). The Regulations describe the disabilities in the Listing of Impairments as "impairments which are considered severe enough to prevent a person from doing any gainful activity." Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1988); 20 C.F.R. § 404.1525(a) (1982). As the Supreme Court noted, "[t]he regulations recognize that certain impairments are so severe that they prevent a person from pursuing any gainful work." Id.,Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). When a claimant's disability is equal to or more severe than an impairment in the Listing of Impairments, he is per se disabled. Knipe at 145. For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 531 (1990); see Social Security Ruling (SSR) 83-19.

At step three, the ALJ must determine that the "medical findings" are at least equal in severity and duration as those in the listed findings. Bernal v. Bowen, 851 F.2d 297, 300 (10th Cir. 1988); 20 C.F.R. S 404.1526(a). "Medical findings" include symptoms (the claimant's own description of his impairments), signs (observations of anatomical, physiological and psychological

abnormalities which are shown by clinical diagnostic techniques) and laboratory findings.  Id.,  20

C.F.R. § 404.1528 (1986).  The claimant's descriptions, alone, are not enough to establish a

physical or mental impairment. Id., 20 C.F.R.  § 404.1528(a).

The Commissioner revised and renumbered the pertinent regulations effective February 19,

2002.  See 66 Fed. Reg. at 58011.  Previous listing 1.05C is now incorporated onto current listing

1.04A which describes the eligible impairment as follows:

> 1.04 Disorders of the spine (e. g., herniated nucleus pulposus, spinal arachnoiditis, spinal
> stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture),
> resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
> With:
>> A. Evidence of nerve root compression characterized by neuro-anatomic
>> distribution of pain, limitation of motion of the spine, motor loss (atrophy with
>> associated muscle weakness or muscle weakness) accompanied by sensory or reflex
>> loss, and, if there is involvement in the lower back, positive straight-leg raising test
>> (sitting and supine); or
>> B. Spinal arachnoiditis . . .; or
>> C. Lumbar spinal stenosis . .

20 C.F.R.Pt. 404, Subpt. P, App.1§ 1.04A (2002).

Defendant claims that while Plaintiff has a general condition to which Listing 1.04A

applies, he fails to identify medical findings that match all of the criteria of the relevant Listing.

Plaintiff has the burden at step three of demonstrating, through medical

evidence, that his impairments meet all of the specified medical criteria contained in a particular

listing. Riddle v. Halter, 10 Fed. Appx. 665, 666 (10th Cir. 2001). The decision states that the ALJ

specifically reviewed section 1.04 and  found that "the claimant has not had motor and sensory

loss as required by this section." Tr. at 16.  The Court finds that substantial evidence supports the

ALJ's decision on this matter.

**Second Alleged Error**

-5-

Plaintiff argues that the ALJ's residual functional capacity (RFC) determination was not supported by substantial evidence because she ignored evidence that Plaintiff's medications make him drowsy. The ALJ noted that Plaintiff "reported that his medications were causing drowsiness and that he had to take them several times a day." Tr. at 17. She properly considered all the evidence, including Plaintiff's subjective complaints, in arriving at her RFC determination. Tr. at 16. The ALJ's conclusion that side effects of Plaintiff's medications do not prevent him from performing gainful activities is supported by substantial evidence.

Plaintiff also claims that the ALJ's RFC determination was erroneous because she relied on the testimony of the vocational expert (VE). Mr. Manriquez argues that the ALJ should not have given any weight to the VE's testimony in this case because Plaintiff does not meet the mathematical and language development skills required for any of the jobs that the expert testified he could perform.

Before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles (DOT), and elicit a reasonable explanation for any discrepancy on this point. Haddock v. Apfel, 196 F. 3d 1084, 1089 (10th Cir. 1999).

The VE identified six jobs which she opined that Mr. Manriquez could perform. Plaintiff contends that, according to the DOT, each of these jobs requires a mathematical and language development level which Plaintiff lacks. Plaintiff contends that the ALJ did not adequately resolve the conflicts between the VE's testimony and the information in the DOT.

The ALJ questioned the VE at length concerning whether or not Plaintiff could perform the jobs which the VE identified, despite his lack of language and mathematical skills. The ALJ explained in detail in her decision how she resolved this issue.

The ALJ noted that the unskilled jobs identified by the expert require less skill than the jobs Plaintiff had previously performed. She explained that she found "no reason to surmise that the claimant has lost cognitive or intellectual functioning since he ceased working, so that his intellectual functioning and skill level would be expected to be the same as that which allowed him to perform semiskilled work in the past. Moreover, the vocational expert noted that such jobs are sometimes performed in the region by people who do not speak English, so that the claimant's language barrier would not prevent him from performing those jobs." Tr. at 18. The ALJ also observed that claimant had held jobs in the past notwithstanding his lack of English proficiency. Id. The ALJ eliminated the job of electronics worker which would require Plaintiff to keep a written log, the only identified job which would require writing. Tr. at 18-19.

The ALJ addressed the issue of the apparent conflict between VE's testimony and the DOT and elicited a reasonable explanation for the conflict before relying on the VE's opinion. The ALJ's determination that Plaintiff's inability to read and write English and to perform mathematical tasks does not prevent him from performing gainful activity is supported by the record. Her decision on this issue is supported by substantial evidence and must therefore be affirmed by the Court.

**Third Alleged Error**

Plaintiff contends that the Commissioner failed to apply the appropriate legal standard in assessing Plaintiff's allegations of pain. The ALJ found that Manriquez's "reports and testimony of

symptoms and functional restrictions were not supported by the evidence overall in the disabling degree alleged, and therefore lacked credibility."

Credibility determinations are peculiarly the province of the finder of fact, and this Court will not upset such determinations when supported by substantial evidence. Kepler v. Chater, 68 F. 3d 387, 391 (10th Cir. 1995) (internal citation omitted). Nonetheless, credibility findings must be closely and affirmatively linked to substantial evidence and not merely conclusory. Id.  A formalistic factor-by-factor recitation of the evidence is unnecessary. As long as the ALJ provides specific evidence upon which she relies to support her credibility findings, she complies with the dictates of Kepler.  Qualls v. Apfel, 206 F. 3d 1368, 1372 (10th Cir. 2000).

A claimant's testimony alone cannot establish the existence of disabling pain. Talley v.Sullivan, 908 F. 2d 585, 587 (10th Cir. 1990). Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. Thompson v. Sullivan, 987 F. 2d 1482, 1488 (10th Cir. 1993) (internal citations omitted). The framework used for proper analysis of a claimant's evidence of pain consists of the following elements:  (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, claimant's pain is in fact disabling. Luna v. Bowen,  834 F. 2d 161, 163-64 (10th Cir. 1987).

At the January 2002 hearing before the ALJ,  Mr. Manriquez reported that he had constant pain.   He testified that he could sit for only 15-20 minutes at a time and had to constantly move

-8-

around to get comfortable.  He stated that he could walk for 10-15 minutes and that he used a cane.  He testified that he could probably lift five pounds.  Tr. at 48-49.

The ALJ noted the incompatibility of the subjective evidence with the objective medical evidence, including x-rays and neurological examinations.  She stated that although Plaintiff testified that he needs to use a cane all the time, there was no evidence that any doctor prescribed the use of a cane and clinical evaluations indicated that Plaintiff's gait was intact without atalgia. She observed that two orthopedists identified symptom exaggeration. Finally, she considered the claimant's report to his orthopedist that he had attempted to return to light work, but that such work was not available. Tr. at 16.

The ALJ's credibility findings must be affirmed if they are supported by substantial evidence on the record as a whole. See Ellison v. Sullivan, 929 F. 2d 534, 537 (10th Cir. 1990).Rice v. Apfel, 990 F. Supp. 1289, 1294 (D. Kan. 1997). The ALJ is entitled to take into account incentives to appear disabled. Diaz v. Secy of Health & Human Serv., 898 F. 2d. 774, 777 (10th Cir. 1990); Broadbent v. Harris, 698 F. 2d 407, 413 (10th Cir. 1983) (noting that consulting physician suspected plaintiff of exaggerating degree of numbness).  It is the ALJ's prerogative to assess the claimant's credibility and decide whether she believes Plaintiff's assertions of severe pain. The ALJ's conclusion that Mr. Manriquez's  allegations of chronic, intractable pain are not supported by the evidence in the disabling degree alleged was reached by application of the proper legal standard.  Substantial evidence supports the ALJ's credibility determination and it will therefore be affirmed.

**Fourth Alleged Error**

Plaintiff contends that the ALJ failed to obtain sufficient evidence to assess Plaintiff's claim.  He contends that the medical evidence did not include an MRI of the upper back which the ALJ should have requested prior to making her decision.

The ALJ is responsible in every case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.   Hawkins v. Chater, 113 F. 3d 1162, 1168 (10th Cir. 1997) (citation omitted); see also 20 C. F. R. § 404.944 (requiring the ALJ to look[] fully into the issues).  The ALJ should order consultative examination when the record establishes reasonable possibility of disability and the result of an examination could be expected to assist in resolving disability issues. Id.

In the instant case, the record includes the findings of at least eight physicians.  Tr. at 207, 211, 221-228, 260, 266-267, 277, 320, 326, 348. Three hearings were held in this matter.  Tr. at 40-80.  An upper back MRI was not necessary for the ALJ to resolve the issues in this case. The Court  finds that the ALJ adequately reviewed and inquired into the relevant areas, including Mr. Manriquez's symptoms, past and current treatment and the impact of his alleged impairments on his daily routine and activities.  See Musgrave v. Sullivan, 966 F.2d 1371, 1375 (10th Cir. 1992).

**Fifth Alleged Error**

Plaintiff claims that the ALJ failed to accord the proper weight to the reports of Plaintiff's treating physician.  A treating physician's opinion generally is favored over that of a consulting physician, see Reid v. Chater, 71 F.3d 372 (10th Cir. 1995); accord., Sorenson v. Bowen, 888 F.2d 706, 711 (10th Cir. 1989) and  must be given substantial weight unless good cause is shown to disregard it. Goatcher v. Dep't of Health & Hum. Serv., 52 F.3d 288, 289 (10th Cir. 1995) (citing Frey v. Bowen, 816 F.3d 508, 513 (10th  Cir. 1987)).

Mr. Manriquez claims that the ALJ improperly dismissed the opinions of his treating physicians at Rehabilitation and Occupational Medicine.  He was treated by Drs. Cohen and Delahoussaye at that facility.  Dr. Cohen opined that Plaintiff could return to light or possibly medium work.  Tr. at 277, 279. There is no indication in the record that Dr. Delahoussaye disagreed with that assessment.  Tr. at 229-255, 259-291.  The ALJ's RFC finding (that Plaintiff could perform sedentary or light work that requires no bending from the waist), Tr. at 16, is  more restrictive than Dr. Cohen's recommendation. The ALJ properly evaluated all the evidence, including the opinions of Plaintiff's treating physicians, in reaching her RFC finding.

**Conclusion**

The ALJ's findings that Mr. Manriquez did not satisfy the requirements of Listing 1.04A and that he retained the RFC for limited sedentary or light work are supported by substantial evidence. The ALJ properly developed the record in this case and used correct legal standards in evaluating Plaintiff's credibility and the medical evidence.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision [Doc. No.7] is **DENIED** and this cause of action is **DISMISSED WITH PREJUDICE**.

_Robert Hayes Scott_
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE